**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>DEAN ANTHONY CARTER,<br><br>Defendant. | Case No. 2:17-cr-153-HDM-GWF<br><br>**REPORT AND RECOMMENDATION**<br><br>MOTION TO SUPRESS (ECF NO.30) |

This matter is before the Court on Defendant Dean Anthony Carter's Motion to Suppress Evidence (ECF No. 30), filed on October 2, 2017. The Government filed its Response (ECF No. 37) on October 25, 2017 and the Defendant filed his Reply (ECF No. 43) on November 6, 2017. An evidentiary hearing was conducted on February 15, 2018.

## **BACKGROUND**

Defendant Dean Anthony Carter is charged in a two count criminal indictment filed on May 10, 2017 with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. 922(g)(1) and 924(a)(2). *Indictment* (ECF No. 1). These charges arise out of Defendant's arrest on April 25, 2017 following the execution of a search warrant at 221 Mission Newport Lane, Apartment No. 107, Las Vegas, Nevada.

On April 25, 2017 at 3:44 P.M., Las Vegas Metropolitan Police Officer Lorell Hinkel applied by telephone to a Clark County, Nevada justice-of-the-peace for a search warrant. *Government Exhibit 4*. Officer Hinkel's application stated in pertinent part:

> On April 24th, 2017, members of the VIPER Auto Theft Task Force received information about a possible wanted person driving a stolen vehicle at the Meadows Apartments located on the corner of Meadows Lane and Mission Ridge Drive. Detective Cherrier [], with the North Las Vegas Police arrived in the area and observed a white Hyundai sedan. Your affiant and Detective Jappe [] observed license plate 7VN702

1

> California, which came back to a 2016 Hertz Hyundai rental car. Detective Jappe verified the VIN of the vehicle which came back to a 2013 Hyundai sedan with VIN#KMHCT4AE4DU557137 showing that the vehicle was cold plated and stolen out of California under LAPD Case # 170205522. At that point surveillance was discontinued.
>
> Detective Cherrier also received information that the subject, Dean Carter, Jr., date of birth [redacted], social [redacted], was in possession of that Hyundai. A records check was done on Carter, which showed that he currently has a felony warrant for Parole Violation out of California that is extraditable. Carter is also a registered felon for Robbery in 1990, Murder in 1993, Sodomy in 2002, Ex-Felon in Possession of a Firearm in 2004, Willful Injury to a Child in 2013, Burglary in 2013 and Receiving Stolen Property in 2016.
>
> Today, April 25th, 2017, your affiant and members of the Auto Theft VIPER Task Force conducted surveillance on the stolen white Hyundai. Carter was observed exiting Apartment #107 located at 221 Mission Newport Lane wearing a gray hoodie and red shorts. He entered the stolen vehicle and shortly thereafter a white female, later identified as Chanelle Thompson-Brennan, date of birth [redacted], and a black male, later identified as Tony Palmore, date of birth [redacted], entered the vehicle with a bunch of luggage.
>
> Over the next 30 minutes multiple people walked directly from Apartment #107 to the stolen vehicle and back to the apartment. Carter eventually walked back into Apartment #107 and the vehicle left property. A stop was conducted by VIPER Auto Theft Task Force and Thompson, Palmore and the driver, who was identified as Herman Brown, date of birth [redacted], were taken into custody. Your affiant conducted an interview with Thompson who stated that the vehicle belongs to a subject she knows as 'R'.
>
> She further stated 'R' was in the vehicle with her shortly before they left which was corroborated by your affiant's physical surveillance. She stated that 'R' was in possession of a handgun and that he was manipulating the magazine for the handgun while he was in the vehicle. He walked back into the apartment and Thompson left in the vehicle. She stated that there were at least three other firearms in the residence and that they were using them to commit robberies. Your affiant showed Thompson a photograph of Carter and she confirmed that he is the person she knows as 'R'. Detectives immediately went back to the residence to continue surveillance. It doesn't appear that anyone has left. Based on the above facts your affiant believes Carter is inside Apartment #107. Your affiant also believes that Carter is in possession of multiple firearms in which he is a prohibited person and cannot possess firearms.

*Exhibit 4*, at 3-5.

The application sought a warrant to search the apartment and to seize firearms and accessories such as ammunition, the person of Dean Carter, Jr., and epithelial cells from Mr. Carter's mouth. *Id.* at 2-3. The justice-of-the-peace issued the search warrant. Upon entering

2

1  the apartment, the officers placed Defendant Carter in physical custody and observed and seized
2  a handgun near his body.  A bullet was also found in Defendant's pocket.
3        In his motion to suppress, Defendant discusses the contents of the arrest reports prepared
4  by Officer Cherrier of the North Las Vegas Police Department and Detective Jappe of the Las
5  Vegas Metropolitan Police Department.  *Motion to Suppress* (ECF No. 30), at 2-3.[1]  As stated in
6  those reports, at approximately 1:30 P.M. on April 25, 2017, Detective Jappe saw three people
7  enter the Hyundai automobile.  Detective Jappe believed that one of the individuals, a black
8  male, was Defendant Carter, whom the officers had seen working on the car earlier.  The
9  Hyundai automobile then left the apartment complex.  The police followed the automobile to a
10 nearby gas station where all three occupants were detained.  It was then discovered that
11 Defendant Carter was not in the vehicle.  Officer Cherrier, Detective Jappe and Officer Hinkel
12 testified at the hearing that after the occupants of the automobile were detained and interviewed
13 at the gas station, the officers returned to the apartment complex where surveillance of
14 Apartment No. 107 was reestablished.  Detective Jappe and Officer Hinkel then prepared and
15 applied for the warrant to search Apartment No. 107.
16       The information regarding the officers' mistaken belief that Defendant Carter was in the
17 Hyundai automobile when it left the apartment complex was not included in Officer Hinkel's
18 search warrant application.  Defendant does not argue in his motion, however, that this omitted
19 information was material to the finding of probable cause or supports the granting of a *Franks*
20 evidentiary hearing.  Defendant instead argues that Officer Hinkel's application did not provide
21 probable cause because it was based on an unreliable anonymous tip and the police observations
22 that flowed from that tip.  Defendant also argues that the application relied on Chanelle
23 Thompson-Brennan's statement that Defendant Carter had a firearm in his possession, but failed
24 to disclose that she had a prior misdemeanor conviction for "Obstructing/False Info to P.O."
25 which rendered her statement completely unreliable.  Defendant argues that the failure to include

---

[1] Officer Cherrier's and Detective Jappes's arrest reports were attached to the motion as Exhibits A-1 and A-2.

3

1   this information in the application supports the granting of a *Franks* hearing to determine
2   whether it was intentionally or recklessly omitted. *Motion to Suppress* (ECF No. 30), at 14-18.
3         The Government initially disputed Defendant's "standing" to challenge the search on the
4   grounds that he did not have a reasonable expectation of privacy in the apartment. During the
5   hearing, the Government conceded that Defendant made or could make a sufficient factual
6   showing that he was an overnight guest in the apartment and therefore has standing to challenge
7   the search. The Government argues, however, that Defendant's assertions that the search
8   warrant application failed to provide probable cause or contained material misrepresentations or
9   omissions of fact are without merit.

## DISCUSSION

11       "A search warrant is supported by probable cause if the issuing judge finds that, 'given
12  all the circumstances set forth in the affidavit before him ... there is a fair probability that
13  contraband or evidence of a crime will be found in a particular place.'" *Illinois v. Gates,* 462 U.S.
14  213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)." *United States v. Underwood*, 725 F.3d 1076,
15  1081 (9th Cir. 2013). The issuing judge must be provided with sufficient facts from which she
16  may draw the inferences and form the conclusions necessary to a determination of probable
17  cause. *Id.* (citing *United States v. Rubio*, 727 F.2d 786, 795 (9th Cir. 1983)). The reviewing
18  court gives "great deference" to an issuing judge's finding that probable cause supports a
19  warrant. *Id.*; *see also United States v. Job*, 871 F.3d 852, 863 (9th Cir. 2017). Probable cause is
20  not met, however, if the issuing judge lacked a substantial basis for concluding that it existed.
21  *Id.*
22       In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme
23  Court held that the Fourth Amendment entitles a defendant to challenge the validity of a search
24  warrant if the defendant makes a substantial preliminary showing that (1) the affidavit in support
25  of the warrant contains intentionally or recklessly false statements and (2) the affidavit purged of
26  its falsities would not be sufficient to support a finding of probable cause. *See United States v.*

*Martinez–Garcia,* 397 F.3d 1205, 1215 (9th Cir. 2005) (citing *United States v. Reeves,* 210 F.3d 1041, 1044 (9th Cir. 2000)). To justify an evidentiary hearing, the defendant is required to make a substantial preliminary showing that the affidavit contains intentionally or recklessly false statements and that probable cause to support the issuance of the warrant would not have existed without the false statements. *Franks,* 438 U.S. at 171–172. If a hearing is granted, the defendant has the burden of proving by a preponderance of the evidence that the false statements were deliberately made or were made with a reckless disregard for the truth. *United States v. DeLeon,* 955 F.2d 1346, 1348 (9th Cir.1992).

Intentional or reckless omissions may also provide grounds for a *Franks* hearing. The Ninth Circuit has stated in this regard:

> "A search warrant, to be valid, must be supported by an affidavit establishing probable cause." *United States v. Stanert,* 762 F.2d 775, 778 (9th Cir.1985). In *Stanert,* we applied the rationale of *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to hold that a defendant could challenge a facially valid affidavit by making a substantial preliminary showing that "the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." *Stanert,* 762 F.2d at 781 ("By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning.") In addition, the defendant must show that the "affidavit, once corrected and supplemented," would not "provide ... a substantial basis for concluding that probable cause existed" to search defendant's residence.

*United States v. Jawara,* 474 F.3d 565, 582 (9th Cir. 2007).

In determining whether a defendant is entitled to an evidentiary hearing, clear proof of deliberate or reckless omission is not required. Such proof is reserved for the evidentiary hearing. *United States v. Stanert*, 762 F.2d at 781. The Seventh Circuit has stated that Defendant "must offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts in order to prove deliberate falsehood or reckless disregard." *United States v. Souffront,* 338 F.3d 809, 822–23 (7th Cir. 2003). While deliberate intent to deceive or reckless disregard for the truth can be inferred from the omission of material facts that would have negated probable cause, the "omission rule" does not require that the affidavit negate

every possible theory that would controvert the affiant's good faith assertion of probable cause. *United States v. Craighead,* 539 F.3d 1073, 1081 (9th Cir. 2008).

### 1. Applicant's Reliance on Anonymous Tip.

The search warrant application states that "members of the VIPER Auto Theft Task Force received information about a possible wanted person driving a stolen vehicle at the Meadows Apartments located on the corner of Meadows Lane and Mission Ridge Drive." *Government's Exhibit 4*, at 3. It also states that Detective Cherrier "received information that the subject, Dean Carter, Jr., . . . was in possession of that Hyundai." The application provided no information about the source of the information. In *Franks*, the Court noted that "[i]f an informant's tip is the source of information, the affidavit must recite 'some of the underlying circumstances from which the informant concluded' that relevant evidence might be discovered, and 'some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was 'credible' or his information 'reliable.'" 438 U.S. at 165, 98 S.Ct. at 2681. (citation omitted). Where the affidavit does not provide information about a tip's source, the court will treat it as an anonymous tip. *United States v. Morales*, 252 F.3d 1070, 1074 (9th Cir. 2001).[2]

"Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, . . . 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.'" *Florida v. J.L.*, 529 U.S. 266, 270, 120 S.Ct. 1375, 1378 (2000) (quoting *Alabama v. White*, 496 U.S. 325, 327, 110 S.Ct. 2412 (1990)). Therefore, an anonymous tip, standing alone, cannot provide probable cause for a search. There are situations, however, in which an anonymous tip, suitably corroborated, provides sufficient indicia of reliability to support a finding of reasonable suspicion or probable cause. In *Alabama v. White*, for example, the police received an anonymous tip that a woman was carrying cocaine and the tipster predicted that the woman would leave an apartment building at a specified time, get into a car matching a particular description and drive to a named motel. The police

---

[2] Detective Cherrier's hearing testimony makes clear that the identity of the informant was known to him.

6

1  conducted surveillance which verified the information provided by the tipster. Because the
2  informant had accurately predicted the woman's movements, the Court held the police had reason
3  to believe that the tipster had inside knowledge about the suspect, and the police therefore had
4  reasonable suspicion to detain the woman and obtain her permission to search her attaché case.
5  496 U.S. at 327, 110 S.Ct. at 2414-15. The Court in *Florida v. J.L.* classified *White* as a "close
6  case" because mere knowledge about a person's future movements does not necessarily imply that
7  the informant knows in particular, whether that person is carrying hidden contraband. 529 U.S. at
8  271, 120 S. Ct. at 1379.

9  In *United States v. Jennen*, 596 F.3d 594, 598 (9th Cir. 2010), the court stated that "[f]or an
10 anonymous tip to be the basis for probable cause, there must be additional evidence that shows the
11 tip is reliable: '(1) the tip must include a range of details; (2) the tip cannot simply describe easily
12 observed facts and conditions, but must predict the suspect's future movements; and (3) the future
13 movements must be corroborated by independent police observation.' *United States v. Morales,*
14 *252 F.3d 1070, 1076 (9th Cir.2001)* (internal quotation marks omitted); *see also United States v.*
15 *Luong,* 470 F.3d 898, 903 (9th Cir.2006) (adopting the *Morales* standard for probable cause
16 determinations)." Defendant argues that the application in this case did not satisfy the foregoing
17 requirements because "[t]he tip did not predict Mr. Carter's future movements, nor was it
18 corroborated by independent police observation." *Motion* (ECF No. 30), at 6.

19 The "anonymous tip" indicated that Defendant Carter was (1) a possibly wanted person,
20 (2) was located at the Meadows Apartments, and (3) was in possession of a stolen Hyundai
21 automobile. Acting on this information, the police determined the following: They went to the
22 Meadows Apartments where they observed a white Hyundai sedan which had California license
23 plates that returned to a different automobile—a 2016 Hyundai owned by the Hertz rental car
24 company. Detective Jappe verified the VIN number on the white Hyundai automobile and
25 determined that it was a stolen vehicle from California. *Exhibit 4*, at 3-4. Defendant has not
26 asserted that the officers obtained the Hyundai's VIN number through an unlawful search.

Detective Jappe testified at the hearing that he obtained the vehicle's VIN number by observing it through the vehicle's windshield. A police officer does not violate the Fourth Amendment by observing and recording the VIN number of an automobile in this manner. *New York v. Class*, 475 U.S. 106, 113-114, 106 S.Ct. 960, 965-966 (1986); *United States v. Caro*, 248 F.3d 1240, 1245 (10th Cir. 2001). The police obtained a records check on Dean Anthony Carter which showed that he had a felony warrant for parole violation from California which was extraditable. *Id.* On April 25, 2017, the police officers observed Defendant Carter exit Apartment No. 107 and enter the stolen vehicle. These findings and observations by the police verified the information provided by the "anonymous tip." Moreover, they independently established through police surveillance that Defendant Carter entered the stolen automobile on April 25, 2017.[3]

### 2. Omission of Information about Ms. Thompson-Brennan's Prior Misdemeanor Conviction

The remaining information in Officer Hinkel's search warrant application was obtained from Chanelle Thompson-Brennan. As stated in the application, the police followed the Hyundai vehicle to a gas station where they detained the occupants: Tony Palmore, Herman Brown, and Ms. Thompson-Brennan. *Government Exhibit 4,* at 4-5. Officer Hinkel interviewed Ms. Thompson-Brennan who stated that the vehicle belonged to an individual she knew as "R." Ms. Thompson-Brennan was shown a photograph of Defendant Carter whom she identified as "R." Ms. Thompson-Brennan also confirmed that Defendant Carter was in the vehicle shortly before the three occupants left the apartment complex—which had also been observed by Officer Hinkel. *Id.* at 5. She further stated that Defendant Carter was in possession of a handgun and that he was manipulating the handgun's magazine while in the vehicle and that there were other firearms in the apartment. *Id.*

---

[3] Officer Cherrier testified at the hearing that he observed Defendant Carter working under the hood of the Hyundai on April 24, 2017. This information was not included in the search warrant application, however, and therefore cannot support the validity of the search warrant.

Defendant argues that the information provided by Ms. Thompson-Brennan was unreliable because she had a prior conviction for making a false statement to the police which Officer Hinkel failed to disclose in the search warrant application. *Motion to Suppress* (ECF No. 30), at 14-15. In *United States v. Reeves*, 210 F.3d 1041, 1044-45 (9th Cir. 2000), the defendant requested a *Franks* evidentiary hearing on the validity of the search warrant affidavit based on the affiant's failure to disclose that the informant had previously been convicted of giving false information about his address to the police. The court noted that in *United States v. Hall*, 113 F.3d 157, 161 (9th Cir. 1997), it had affirmed the granting of a motion to suppress where the police failed to disclose that the informant had been convicted of falsely reporting a crime. The district court in *Reeves* distinguished *Hall* on the grounds the informant had been convicted of a significantly less serious crime of dishonesty. In rejecting this distinction, the Ninth Circuit stated that "[a]ny crime involving dishonesty necessarily has an adverse effect on an informant's credibility. In the absence of countervailing evidence to bolster the informant's credibility or the reliability of the tip, an informant's criminal past involving dishonesty is fatal to the reliability of the informant's information and his/her testimony cannot support probable cause." In *United States v. Elliott*, 322 F.3d 710, 716 (9th Cir. 2003), the court stated that the informant's previous record of providing reliable tips to the police is one type of information that can overcome the credibility doubts raised by his or her criminal record.

There is no evidence that Ms. Thompson-Brennan was an informant whom the police had previously used in other investigations. Defendant argues that because Ms. Thompson-Brennan was detained and was advised of her *Miranda* rights before she spoke to the Officer Hinkel, it is probable that the police officers obtained a criminal records check on her before they applied for the search warrant. Defendant further argues that a records check would have only informed the officers that Ms. Thompson-Brennan had a conviction for obstructing or providing false

information to a public officer in violation of Nevada Revised Statute (NRS) Section 197.190.[4] Officer Hinkel and Detective Jappe testified, however, that they did not run a criminal records on Ms. Thompson-Brennan and therefore did not have information about her prior conviction when they applied for the search warrant. Detective Cherrier had no knowledge of whether a records check was obtained on Ms. Thompson-Brennan.

The misdemeanor citation issued to Ms. Thompson-Brennan on April 18, 2016 charged her with "obstructing a public officer." It alleged that she "did willfully hinder, delay or obstruct a public officer . . . in the lawful discharge of his official duties, investigating a domestic violence incident by running away from me after seeing me in police uniform walking toward her while telling her to stop." *Government Exhibit 5*. The Government argues that Ms. Thompson-Brennan's prior misdemeanor conviction was not for a crime of dishonesty and, therefore, would not have negated probable cause even if it had been known to the police officers.

In *United States v. Miller*, 753 F.2d 1475, 1478 (9th Cir. 1985), the court upheld the district court's denial of defendant's request for a *Franks* evidentiary hearing which was based, in part, on the failure to disclose the informant's prior criminal record, including a perjury conviction. The court found that the federal agents did not know of the informant's perjury conviction when they applied for the warrant. The court further stated that while it might have been prudent for the federal agents to check on the informant's background and criminal record before they applied for the warrant, the failure to do so did not constitute an intentional or reckless disregard for the truth. *See also United States v. Meling*, 47 F.3d 1546, 1553-54 (9th Cir. 1995). In *United States v. Tanguay*, 907 F.Supp.2d 165, 182 (D.N.H. 2012), the district court found that the affiant officer did not know of the informant's prior conviction for a crime of

---

[4] NRS Section 197.190 states that "[e]very person who, after due notice, shall refuse or neglect to make or furnish any statement, report or information lawfully required of the person by any public officer, or who, in such statement, report or information shall make any willfully untrue, misleading or exaggerated statement, or who shall willfully hinder, delay or obstruct any public officer in the discharge of official powers or duty, shall where no other provision of law applies, be guilty of a misdemeanor."

dishonesty at the time she submitted the affidavit for the search warrant, and therefore the failure to include this information in the affidavit did not constitute an intentional or reckless omission of a material fact. The fact that the officer could or should have learned of this information before seeking the warrant did not change the result. The court stated that "[t]o rule otherwise would transform *Franks* into a due diligence requirement for investigators which, however, desirable it might seem under the circumstances of this case, is simply not a recognized aspect of the Fourth Amendment at present. Indeed, 'to require that all potentially exculpatory evidence be included in an affidavit [] places an extraordinary burden on law enforcement officers, compelling them to follow up and include in a warrant affidavit every hunch and detail of an investigation in the futile attempt to prove the negative proposition that no potentially exculpatory information has been excluded.' *May v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998)."

It is, of course, conceivable that the police officers obtained a criminal records check on Ms. Thompson-Brennan before they applied for the search warrant. Nothing in the record, however, supports a rejection of their testimony that they did not do so. Their testimony on this point is credible in light of all the circumstances. The officers had no knowledge of or information about Ms. Thompson-Brennan before she was detained at the gas station. At that time, the officers discovered that Defendant Carter, whom they were seeking to arrest, was not in the automobile. Ms. Thompson-Brennan stated that the automobile belonged to Defendant Carter whom she knew as "R" and that he had been in the automobile before it left the apartment complex; an event that was observed by Officer Hinkel. Ms. Thompson-Brennan also stated that Defendant Carter was in possession of a firearm. The circumstances indicate that the officers were desirous of promptly returning to the apartment complex to re-establish surveillance and to seek a search warrant for the apartment. While they could have obtained a records check on Ms. Thompson-Brennan, the evidence does not support a finding that they did. Nor does it support a

finding that they decided not to obtain a records check so as to avoid obtaining adverse information about her.

What information the officers would have obtained had they conducted a records check is debatable. Defendant argues that they would have only discovered that Ms. Thompson-Brennan had a conviction for "Obstructing/False Information to P.O.," *Government Exhibit 5*, which could mean that she had a conviction for either obstructing or making a false statement to a public officer, or both. If the officers had been able to obtain additional information about the conviction, however, they could have discovered that Ms. Thompson-Brennan's conviction did not involve the making of a false statement. *Id.* The Court need not decide this question, however, because there is no evidence that the officers acted improperly in not obtaining a criminal records check on Ms. Thompson-Brennan.

The information provided by Ms. Thompson, together with the other information obtained by the officers on April 24-25, 2017—(1) that the Hyundai automobile was stolen, (2) that Defendant Carter was a convicted felon and there was an outstanding warrant for his arrest, (3) that Defendant Carter was observed in the automobile and was seen going to and from Apartment No. 107—provided probable cause to search Apartment No. 107 for firearms and to arrest Defendant Carter. Even if the search warrant application did not support a finding of probable cause, the Court would not apply the exclusionary rule because the police officers had an objectively good faith basis to believe that the search warrant was valid. *United States v. Leon*, 468 U.S. 897, 925, 104 S.Ct. 3405 (1984). In order for this "good faith" exception to apply, the affidavit must establish at least a colorable argument for probable cause. *United States v. Crews*, 502 F.3d 1130, 1136 (9th Cir. 2007) (citing *United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006)). For the reasons discussed above, the search warrant application provided at least a colorable argument for probable cause. None of the four circumstances cited in *Leon* for not applying the good faith exception are present in this case. In particular, the Court

rejects the argument that the officers intentionally or recklessly misled the issuing judge by making false statements or omitting material facts in the application.

### 3. **Defendant's Other Arguments Regarding the Invalidity of the Search Warrant.**

Defendant argues that the search warrant was facially invalid because it failed to particularly describe the place to be search or the things to be seized. The search warrant stated that the place to be searched was the premises located at 221 Mission Newport Ln #107, Las Vegas, Nevada, which was the apartment unit that Defendant Carter had been observed going to and from on April 25, 2017. The Defendant does not show how the premises could be more particularly described.

The search warrant stated that the items to be seized included (1) any and all firearms found on the premises, and firearms accessories such as magazines, ammunition, holsters and spent or live cartridges, (2) the person of Defendant Carter, and (3) epithelial cells from Defendant Carter's mouth. In determining whether the description of items to be seized is sufficiently precise, the court focuses on (1) whether probable cause exists to seize all items of a particular type described in the warrant, (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not, and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued. *United States v. Vasquez*, 654 F.3d 880, 884 (9th Cir. 2011) (citing *United States v. Stubbs*, 873 F.2d 210, 211 (9th Cir. 1989)).

The search warrant's authorization to seize firearms, ammunition and other firearm related items was predicated on Defendant Carter being a convicted felon who was legally precluded from possessing firearms or ammunition. Thus, any firearms found in the residence that could reasonably be in Defendant's possession were subject to seizure. *United States v. Campbell*, 256 F.3d 381, 389 (6th Cir. 2001). The first element of the test set forth in *Vasquez* is satisfied because the warrant reasonably encompassed the seizure of any firearms or ammunition

13

in Defendant's possession. The authorization to obtain epithelial cells from Defendant's mouth was for purposes of connecting his DNA to any DNA that might be found on seized firearms or firearms accessories, and was therefore also reasonable. Because the nature and extent of Defendant Carter's connection to Apartment No. 107 was unknown, the warrant arguably should have contained language that limited the scope of the seizure to firearms and related items that could reasonably be in the possession of the Defendant. The lack of such a limitation, however, did not render the warrant so deficient in detail as to render the officer's reliance on its validity unreasonable. *See United States v. Crews*, 502 F.3d at 1136 (citing *Leon*, 468 U.S. at 923-26).

Defendant also argues that the search warrant was invalid because it was not signed by the issuing judge as required by NRS Section 179.045.4. That statute provides as follows:

> After a magistrate has issued a search warrant, whether it is based on an affidavit or an oral statement given under oath, the magistrate may orally authorize a peace officer to sign the name of the magistrate on a duplicate original warrant. A duplicate original search warrant shall be deemed to be a search warrant. It must be returned to the magistrate who authorized the signing of it. The magistrate shall endorse his or her name and enter the date on the warrant when it is returned. Any failure of the magistrate to make such an endorsement and entry does not in itself invalidate the warrant.

*Government's Exhibit 4* shows that Officer Hinkel signed the judge's name to the search warrant on April 25, 2017 as authorized by the statute. The transcript of the telephone warrant also shows that the issuing judge granted Officer Hinkel permission to affix her signature to the warrant. The search warrant was endorsed by the issuing judge on May 2, 2017. Therefore, the requirements of NRS 179.045.4 were met.

## CONCLUSION

The applicants for the search warrant, Officer Hinkel and Detective Jappe, did not make any intentional or recklessly false statements of material fact; nor did they intentionally or recklessly omit any material facts from the application. The search warrant application provided sufficient evidence to support a finding of probable cause by the issuing judge; and to the extent that it did not, the good faith exception to the exclusionary rule applies. Finally, the search

warrant was sufficiently particular in describing the place to be searched and the items to be seized.  The warrant also complied with the formalities of the Nevada statute.  Accordingly,

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence (ECF No. 30) be **denied.**

Dated this 23rd day of February, 2018.

*George Foley Jr.*
GEORGE FOLEY, JR.
UNITED STATES MAGISTRATE JUDGE